UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THERESA GRANT,

                              Plaintiff,

                      -against-

**MEMORANDUM AND ORDER**
16-CV-00853 (JMA)(ARL)

DETECTIVE GERARD GIAMBRUNO,
POLICE OFFICER TRILLO #910, POLICE
OFFICER DUNN, #1098, POLICE OFFICER
DOUGLAS HANDIMAN, #8193, F.B.I SPECIAL
AGENT JEREMY A. BELL, A.D.A SUPERVISOR
WARREN N. THORER, SERGEANT TIMOTHY
P. MENSCH, SERGEANT MURPHY, U.S. CUSTOMS
SUPERVISOR BOW, U.S. CUSTOMS K-9 COVE,

                             Defendants.
-------------------------------------------------------------------X

**AZRACK, United States District Judge:**

       On February 12, 2016, pro se plaintiff Theresa Grant ("plaintiff") commenced this action

against Nassau County Detective Gerard Giambruno ("Det. Giambruno"), Nassau County Police

Officer Trillo #910 ("P.O. Trillo"), Nassau County Police Officer Dunn, #1098 ("P.O. Dunn"),

Nassau County Police Officer Douglas Handiman, #8193 ("P.O. Handiman"), F.B.I Special

Agent Jeremy A. Bell ("Special Agent Bell"), Nassau County A.D.A Supervisor Warren N.

Thorer ("ADA. Thorer"), Nassau County Sergeant Timothy P. Mensch ("Sgt. Mensch")[1], Nassau

County Sergeant Murphy ("Sgt. Murphy"), U.S. Customs Supervisor Bow ("Bow"), and U.S.

Customs K-9 Cove ("Cove" and collectively, "defendants") purporting to allege claims of

"deceptive investigation, color of law, fales [sic] arrest and malicious prosecution" in violation

---

[1] The Court notes that the spelling of this defendant's sur name is inconsistent in the complaint.   For clarity, the
Court will use "Sgt. Mensch" to refer to this defendant.

of plaintiff's Fourteenth Amendment rights.   (Compl. ¶ II. B-C.)   Accompanying the complaint

is an application to proceed in forma pauperis.

Upon review of the declaration in support of the application to proceed in forma pauperis,

the Court finds that plaintiff is qualified to commence this action without prepayment of the

filing fee.   See 28 U.S.C. § 1915(a)(1).   Therefore, plaintiff's request to proceed in forma

pauperis is granted.   However, for the reasons that follow, the Complaint is sua sponte

dismissed, in part, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## BACKGROUND[2]

Plaintiff's sparse, handwritten complaint is submitted on the court's general complaint

form and includes an additional nine (9) typed pages.   The complaint describes two discrete

events.   First, plaintiff complains that she was unlawfully removed from Aruba in January 2016.

Second, plaintiff complains about an incident alleged to have occurred in February or March

2013 involving the confiscation of her firearm by Nassau County police officers.

I.    The 2016 Aruba Events

Plaintiff alleges that she "taken against her will" to the "Aruba International Airport" on

January 13, 2016 and was "forced to leave the County [Aruba] against my will" by the FBI.

(Compl. ¶ III.C.)   Although plaintiff claims to have presented her "travel documents to the

Agent as well as a contract agreement for my upcoming art exhibit on February 27, 2016," she

was "forced to leave the Country without cause."   Plaintiff alleges that she was not permitted to

---

[2] The following facts are taken from plaintiff's complaint and are presumed to be true for the purpose of this
Memorandum and Order.   Plaintiff's allegations have been reproduced here exactly as they appear in the
Complaint.   Errors in spelling, punctuation, and grammar have not been corrected or noted.

take her seventeen (17) art pieces, valued at $14,350, with her.  (Id.)  Rather, defendants Bow

and Cove permitted plaintiff to call a friend, Elvis Lopez, who is holding her artwork for her in

Aruba.  (Id.)  Plaintiff alleges that Bow told her that she would have to leave the country

because she "ha[s] no money."  (Id.)  Plaintiff claims that, as a result of a "deceptive F.B.I.

investigation," she was falsely reported to U.S. Customs to be a "mentally deranged person" and

"a sex worker."  (Id.)

      II.    <u>The 2013 Confiscation of Plaintiff's Firearm</u>

According to the complaint, plaintiff "is a lesbian native from the Island of Jamaica" who

was residing at the home of her aunt, Mrs. Forrest, located in Uniondale, New York in "early

2013."  (Compl. at 6.)  Plaintiff alleges that Mrs. Forrest "would often state her opinion that

LBGT individuals were all mentally deranged."  (Id.)  On February 23, 2013, Mrs. Forrest

"called 911 in retaliation for [plaintiff's] refusal to lie to the Department of Social Services

("DSS") about the living arrangement at the home in anticipation of Mrs. Forrest's

granddaughter moving to the home.  (Id.)  Plaintiff claims that she had a legal firearm in the

home and, after she refused to lie to DSS, Mrs. Forrest wanted plaintiff to leave her firearm

elsewhere "for safe keeping."  (Id. at 7.)  When the police arrived, plaintiff alleges that Mrs.

Forrest told Officers Lettier and Favire that she was "afraid for her safety and did not want a

firearm in the dwelling."  (Id.)  Officer Lettier asked plaintiff for her driver's license and pistol

license and, shortly thereafter, advised plaintiff that there is a harassment complaint as well as

grand larceny complaint filed against her.  (Id.)  Officer Lettier asked plaintiff repeatedly to

explain those complaints but plaintiff was "perplexed" and did not know anything about those

complaints.  (Id.)  Sgt. Colletti arrived and "the decision was made to remove [plaintiff's]

firearm from the basement apartment."   Sgt. Colletti explained that the decision was made to "keep the peace."   (Id. at 7-8.)

On March 5, 2013, plaintiff alleges that she visited the First Precinct and requested that her firearm and pistol license be returned to her as well as "an explanation on why there were Criminal Complaints against her."   (Id. at 8.)   Officer Marin allegedly advised plaintiff that she must make a written request to the Commanding Officer of the First Precinct regarding the firearm and that the pistol license would be held until the firearm is returned.   (Id.)   With regard to the information requested about the criminal complaints against her, Officer Marin instructed plaintiff to fill out a Freedom of Information ("FOI") inquiry form in order to learn more about the criminal complaints against her.   (Id.)   Plaintiff alleges that she received a letter dated March 6, 2013 from P.O. Leahy wherein plaintiff was advised that the Nassau County Pistol License had been suspended without reason.   (Id. at 9.)   According to plaintiff, the suspension of her pistol license "caused tremendous disruption to [] the security guard company[,] Grant's Elite Security Company[,] she was in the process of developing."   (Id. at 8.)

On March 7, 2013, plaintiff claims to have written a letter to the Commanding Officer of the First Precinct requesting the return of her firearm and also made a FOI request concerning the criminal complaints against her.   (Id.)   Plaintiff also wrote back to P.O. Leahy on May 23, 2013 and requested an explanation as to why her pistol license was suspended.   (Id. at 9.)

Having received no response to either letter, plaintiff contacted the FBI and the U.S. Department of Justice ("DOJ") on March 13, 2013.   (Id. at 8-9.)   Plaintiff received a letter dated April 9, 2013 from FBI Special Agent Jeremy A. Bell ("Bell") and plaintiff called him on May 2, 2013.   (Id. at 9.)   Plaintiff claims that she was instructed by Bell to file a complaint with

the Nassau County Police Department, Internal Affairs Unit ("IAU"), and to provide the complaint tracking number she receives to Bell.  (Id.)  Plaintiff then called the IAU and spoke with Sgt. Mensch.  (Id.)  Plaintiff alleges that she expressed concern about reporting her complaint over the telephone and Sgt. Mensch agreed to meet with plaintiff, in person, at her residence.  (Id.)  Shortly thereafter, plaintiff was visited by Sgt. Mensch and Sgt. Murphy. (Id.)  Plaintiff describes that she provided "her account of events" and that the officers "spoke extensively about the facts she presented to them."  (Id.)  At the end of the meeting, the officers are alleged to have "assured" plaintiff that "they would get back to her with their findings." (Id.)  Having not heard back from officers, plaintiff wrote a letter dated May 28, 2016 to Sgt. Mensch requesting a complaint tracking number.  (Id. at 9–10.)  Plaintiff describes that, in an act of retaliation for her complaints, she was visited by P.O. Trillo and P.O. Dunn on June 12, 2013 who questioned her about her complaint to IAU.  (Id. at 10.)  According to the complaint, these officers explained that they were sent by their supervisor, Ryder, and told plaintiff not to make any more complaints to IAU.   Rather, any complaints should be made directly to Ryder. (Id.)

Plaintiff describes that she felt "terror," was "startled" and "feared for her safety" following the June 12, 2013 visit so she visited the Nassau County Police Department on July 10, 2013 and asked to speak with P.O. Leahy.  (Id.)  Plaintiff was advised that he was not available and Sgt. Mistretta appeared to assist plaintiff.  (Id.)  Plaintiff claims that Sgt. Mistretta informed her that her pistol license and firearm would not be returned because she was "mentally deranged" and that is the reason why her firearm was taken from her.  (Id.)  According to the complaint, Sgt. Mistretta explained that Mrs. Forrest told the police that plaintiff was mentally

deranged and that Mrs. Forrest feared for her safety.   (Id.)   Plaintiff then spoke with Sgt. Murphy from the IAU and explained to him that the actions of the police were unlawful, and she continued to request a complaint tracking number for her original complaint, together with a tracking number for this new complaint.   (Id.)   Sgt. Murphy did not provide the requested tracking numbers and concluded their meeting.

Plaintiff next alleges that, on November 21, 2013, she was visited by two Nassau County Sheriff's officers while she was working at Starbucks and was presented with a summons signed by the Honorable Teresa K. Corrigan, Nassau County Family Court.   (Id. at 11.)   A few days later, plaintiff alleges that she was visited by another officer who gave her a copy of an order of protection signed by Judge Corrigan.   (Id.)   On January 2, 2014, plaintiff claims to have been "awoken by a loud pounding at her room door."   (Id.)   Plaintiff describes that she grabbed her camera, began recording, and opened the door.   (Id.)   "Two police officers entered [her] room. One officer demanded that [she] leave with them and reached for her camera.   Ms. Grant requested to see a warrant, but both officers stated that they did not need a warrant."   (Id.)   One of the officers tried to grab the camera but plaintiff "held strong to her camera."   (Id.) Eventually, one of the officers took the camera and removed the memory card.   (Id. at 12.) Plaintiff alleges that she was then placed in handcuffs and taken from her apartment against her will and without being read her Miranda rights.   (Id.)   Plaintiff was brought to the First Precinct where she was searched, fingerprinted and photographed, and then brought to Court for arraignment before the Honorable Tricia M. Ferrell.   (Id.)   Plaintiff claims that Judge Ferrell expressed that she was familiar with Ms. Grant having heard about her from Assistant District Attorney Betty Crowder who is alleged to be "close friends" with Mrs. Forrest.   (Id.)   Rather

than recuse herself, Judge Ferrell allowed this "unjust conflict of interest" and entered a stay away order against plaintiff that required her to stay away from Mrs. Forrest.  (Id.)  As a result, plaintiff became homeless.  (Id.)  On January 2, 2014, plaintiff acquired emergency shelter at Glory House through the Nassau County Department of Social Services.  (Id.)  A few days later, however, she was moved to a room "for mentally high risk individuals without cause or evaluation from a doctor."  (Id. at 12–13.)  After two weeks "of being isolated in [this] room" plaintiff met with the director of the shelter who determined that plaintiff did not belong in the room designated for mentally high risk individuals and moved her from that room.  (Id.)

On January 6, 2015[3], plaintiff's criminal trial began before the Honorable David Goodsell and plaintiff chose to proceed pro se.  (Id. at 13.)  According to the complaint, following plaintiff's "effective[] and successful[]" cross-examination of Mrs. Forrest in that trial, Judge Goodsell acquitted plaintiff of all charges and stated that there was "legally insufficient evidence to support the charges."  (Id.)

As a result of the foregoing, plaintiff seeks various injunctive and monetary relief, including: (1) the reinstatement of her Nassau County pistol license and her New York State license; (2) the return of her firearm; (3) an unspecified sum as compensatory damages; and (4) an unspecified sum as punitive damages.  (Id. at 14.)

## DISCUSSION

I.    In Forma Pauperis Application

Upon review of plaintiff's declaration in support of her application to proceed in forma pauperis, the Court finds that plaintiff is qualified to commence this action without prepayment of

---

[3] It is unclear whether plaintiff intended to allege that the trial took place in 2014 rather than 2015.

the filing fees.   See 28 U.S.C. § 1915(a)(1).   Therefore, plaintiff's request to proceed in forma pauperis is granted.

II.    Standard of Review

Pursuant to the in forma pauperis statute, 28 U.S.C. §1915, a court must dismiss an action if it determines that it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).   The Court must dismiss the action as soon as it makes such a determination.

Pro se submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers."   Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997).   In addition, the court is required to read the plaintiff's pro se complaint liberally and interpret it as raising the strongest arguments it suggests.   United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (per curiam) (citation omitted); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

The Supreme Court has held that pro se complaints need not even plead specific facts; rather the complainant "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."   Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted); cf. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").   However, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face."   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).   The plausibility standard requires "more

than a sheer possibility that a defendant has acted unlawfully."   Id. at 678.   While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   Id. at 678 (quoting Twombly, 550 U.S. at 555).

     A.    *Section 1983*

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.   Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."   Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979); Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).   "To avoid sua sponte dismissal of a § 1983 claim, a plaintiff must allege that (1) the defendant was a state actor, i.e., acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." Milan v. Wertheimer, 808 F.3d 961, 964 (2d Cir. 2015) (per curiam) (internal quotation marks and citation omitted); see also Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010).   In addition, in order to state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. Farid v. Elle, 593 F.3d 233, 249 (2d Cir. 2010).

     In addition, Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), permits recovery for some constitutional violations by federal officials, even in

the absence of a statute conferring such a right.   See Carlson v. Green, 446 U.S. 14, 18 (1980).

To state a claim under Bivens, a plaintiff must "allege that a defendant acted under color of

federal law to deprive plaintiff of a constitutional right."   Tavarez v. Reno, 54 F.3d 109, 110 (2d

Cir. 1995).   In other words, a plaintiff must show that his or her rights were violated by a

defendant acting on behalf of the federal government in order to succeed on a Bivens claim.

1.   Claims Against Det. Giambruno, P.O. Handiman and ADA Supervisor Thorer

Although plaintiff names Det. Giambruno and P.O. Handiman in the caption of her

complaint, neither of these defendants is again mentioned in the body of the complaint.   Thus,

plaintiff has not included any factual allegation of conduct or inaction attributable to either of

them.   Similarly, plaintiff does not allege any unlawful conduct by ADA Supervisor Thorer.

Rather, plaintiff describes only that she made a complaint on February 19, 2013 to the Nassau

County District Attorney's office and that ADA Supervisor Thorer took her complaint.   Given

the absence of any factual allegations of conduct that could be reasonably construed to support a

Section 1983 claim against any of these defendants, the Court finds that plaintiff has not alleged

a plausible Section 1983 claim against any of them.   Accordingly, such claims are dismissed in

their entirety without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2.   Claims Against the Remaining Defendants

Plaintiff's Section 1983 claims against P.O. Trillo, P.O. Dunn, Sgt. Mensch and Sgt.

Murphy, as well as her Bivens claims against Bow and Cove shall proceed.   Accordingly the Clerk

of the Court shall issue summonses for these defendants and shall forward the summonses together

with copies of the complaint to the United States Marshal Service for service upon these defendants

forthwith.

**CONCLUSION**

10

For the reasons set forth above, plaintiff's application to proceed in forma pauperis is granted, however the complaint is sua sponte dismissed without prejudice, in part, as against Det. Giambruno, P.O. Handiman, and A.D.A. Thorer and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).    Plaintiff's Section 1983 claims against P.O. Trillo, P.O. Dunn, Sgt. Mensch and Sgt. Murphy, as well as her Bivens claims against Bow and Cove shall proceed.   Accordingly the Clerk of the Court shall issue summonses for these defendants and shall forward the summonses together with copies of the complaint to the United States Marshal Service for service upon these defendants forthwith.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal.   See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).   The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se plaintiff.

**SO ORDERED**.                                              __/s/ JMA_____

                                                                      Joan M. Azrack

Dated:      July 7, 2016                                   United States District Judge
                 Central Islip, New York